Stephen Weil (IL Bar # 6291026) *pro hac vice*
Benjamin Berkman (IL Bar # 6329445) *pro hac vice*
ROMANUCCI & BLANDIN, LLC
321 North Clark Street, Suite 900
Chicago, IL 60654
Telephone: +1 (312) 253-1000
sweil@rblaw.net
bberkman@rblaw.net

*Attorneys for Plaintiff*

ADAM GORDON
United States Attorney
Southern District of California

GLEN F. DORGAN, CA Bar No. 160502
STEPHANIE A. SOTOMAYOR, IL Bar No. 6325877
LISA M. HEMANN, AZ Bar No. 024703
Assistant United States Attorneys
880 Front Street, Room 6293
San Diego, CA 92101
Telephone:  (619) 546-7665/9590/6964
Glen.Dorgan@usdoj.gov
Stephanie.Sotomayor@usdoj.gov
Lisa.Hemann@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| TAVON BARBER, | Case No. CV-25-00086-TUC-AMM |
| Plaintiff, | Case No. CV-25-00088-TUC-AMM |
| v. | **JOINT CASE MANAGEMENT** |
| UNITED STATES OF AMERICA | **REPORT** |
| Defendant. | |
| TAVON BARBER, | |
| Plaintiff, | |
| v. | |
| JACLYN AVILEZ, et al, | |
| Defendants. | |

## JOINT CASE MANAGEMENT REPORT

The parties conducted a conference pursuant to Fed. R. Civ. P 26(f), and report to the Court as follows:

1. <u>Rule 26(f) Conference</u>: The following attorneys attended the Rule 26(f) conference:  Stephen Weil and Benjamin Berkman on behalf of plaintiff Tavon Barber; Stephanie Sotomayor and Lisa Hemann on behalf of defendants United States of America and Avilez.

2. <u>Parties</u>: In CV-25-00086-TUC-AMM, the plaintiff is Tavon Barber and the defendant is the United States of America. In CV-25-00088-TUC-AMM, the plaintiff is Tavon Barber and the defendants are Jaclyn Avilez and unknown prison medical staff.

3. <u>The factual and legal bases of the parties' claims and defenses and relief sought</u>:

    a. Plaintiff: At the time of the events giving rise to this case, Plaintiff Tavon Barber was incarcerated at USP – Tucson, a prison operated by the United States Bureau of Prisons in Tucson, Arizona. Around 7:00 p.m. on December 30, 2021, after Mr. Barber and other inmates raised concerns about the food at USP Tucson, correctional officers placed Mr. Barber in full body restraint and took him to his cell.  Correctional officers left Mr. Barber overnight without monitoring him; no medical staff or correctional officers checked on Mr. Barber, nor was he assisted in eating or using the bathroom.  The next day, correctional officers went into Mr. Barber's cell—where he was still restrained—and a Lieutenant ordered officers to tighten Mr. Barber's handcuffs. Officers then moved Mr. Barber to a holding cell, where he was placed in a restraint chair while still wearing a full body restraint.  After about two hours in the restraint chair, Mr. Barber lost feeling in his hands and

alerted everyone who passed by. Mr. Barber's hands had become visibly swollen as a result of the tightened restraints.  Defendant Nurse Avilez and other prison staff checked on Mr. Barber, who informed them that his restraints were too tight and that he could not feel his hands. No one removed the restraints. Mr. Barber remained restrained for approximately 48 hours, during which time he was given one meal and was never given access to a bathroom, resulting in Mr. Barber urinating and defecating on himself. Finally, around 7 a.m. on January 1, 2022, a new nurse checked on Mr. Barber, noted Mr. Barber's swelling, and asked prison staff to take Mr. Barber out of the restraint chair and loosen his handcuffs.  The next day, Mr. Barber was taken to an outside hospital and diagnosed with an ischemic injury to his forearms and hands from the extended, tight cuffing. Mr. Barber was diagnosed with compartment syndrome and necrosis. As a result of these conditions, Mr. Barber's left hand was amputated, and medical staff had to remove large portions of the forearm muscles in his right arm.  Mr. Barber suffered excruciating physical pain and he suffered and continues to suffer emotionally.  Mr. Barber is permanently disfigured and disabled, having lost the use of his hands. In No. CV-25-00086-TUC-AMM, Plaintiff seeks relief against Defendant United States under the Federal Tort Claims Act, including compensatory damages, costs, and interest. In No. CV-25-00088-TUC-AMM, Plaintiff seeks relief against Defendant Nurse Avilez and unknown parties under *Bivens* for violation of Plaintiff's Eighth Amendment rights, including compensatory damages, punitive damages, costs, and interest.

b. Defendant:  Plaintiff, who was an inmate at United States Penitentiary, Tucson (USP-Tucson) during the time of the actions/inaction in question, brings this lawsuit pursuant to the Federal Tort Claims Act

(FTCA) and asserts claims for assault, battery, negligence, medical negligence, and intentional infliction of emotional distress (IIED), and under *Bivens v. Six Unknown Federal Agents*, 403 U.S. 388 (1971) for alleged Eighth Amendment rights violations. This case is in its preliminary stages, but based on the information currently available, Defendant raises the following defenses: To the extent the conduct at issue in this case was by medical staff at USP-Tucson, Defendant asserts the lack of subject matter jurisdiction relating to Plaintiff's claims for assault and battery. 28 U.S.C. § 2680(h). Defendant asserts that Plaintiff's Complaint fails to state a claim regarding IIED. As to Plaintiff's medical negligence claim, Defendant asserts that medical expert testimony will be necessary. Defendant further asserts that Plaintiff has not yet established the applicable standard of care; that Plaintiff has not yet satisfied the statutory requirements necessary to establish a medical negligence action, *see* A.R.S. § 12-2603 (requiring certification concerning expert testimony, and a preliminary expert affidavit with initial disclosures); and that Plaintiff has not yet established that the actions or inactions of a health care professional fell below the standard of care. Defendant asserts that the actions/inactions of non-federal nonparties could be responsible, or share fault, for Plaintiff's claimed damages. To the extent that the parties reach a settlement or a judgment in this case, such settlement or judgment will operate to preclude actions against the individual employees whose action/inaction is at issue. *See* 28 U.S.C. § § 2672, 2676. Defendant Avilez asserts that she is entitled to qualified immunity insofar as the alleged violations were of rights that were not clearly established at the time of the conduct in question. She further asserts that she was not

deliberately indifferent to Plaintiff's serious medical needs, and that any injuries asserted by Plaintiff were not caused by her conduct.

4. <u>Elements of proof for Plaintiff's claims and Defendant's affirmative defenses:</u>

    a. Plaintiff's claims:

    In No. CV-25-00086-TUC-AMM, Plaintiff's claims arise under the Federal Tort Claims Act.  In assessing the United States' liability under the FTCA, courts are required to apply the law of the state in which the alleged tort occurred (here, Arizona). *Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006).

    i. **Assault**: To succeed on an assault claim in Arizona, a plaintiff must prove "that the defendant acted with intent to cause another harmful or offensive contact or apprehension thereof, and the other person apprehend[ed] imminent contact." *Lewis v. Dirt Sports LLC*, 259 F. Supp. 3d 1039, 1044 (D. Ariz. 2017) (cleaned up).

    ii. **Battery**: "To succeed on a battery claim, Arizona law requires a plaintiff to prove that the defendant intentionally engaged in an act that results in harmful or offensive contact with the person of another." *Lewis v. Dirt Sports LLC*, 259 F. Supp. 3d 1039, 1044 (D. Ariz. 2017) (cleaned up).

    iii. **Intentional Infliction of Emotional Distress**: To succeed on an intentional infliction of emotional distress claim under Arizona law, "the plaintiff must show that the defendant engaged in conduct so extreme and outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . . . Second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his

conduct.  Third, severe emotional distress must indeed occur as a result of defendant's conduct." *Lewis v. Dirt Sports LLC*, 259 F. Supp. 3d 1039, 1046–47 (D. Ariz. 2017) (cleaned up).

iv.  **Negligence**: To succeed on a negligence claim under Arizona law, a plaintiff must show "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Lewis v. Dirt Sports LLC*, 259 F. Supp. 3d 1039, 1045 (D. Ariz. 2017)

v.  **Medical Malpractice**: "In medical malpractice actions, as in all negligence actions, the plaintiff must prove the existence of a duty, a breach of that duty, causation, and damages. The yardstick by which a physician's compliance with [his] duty is measured is commonly referred to as the 'standard of care.'" *Seisinger v. Siebel*, 220 Ariz. 85, 94, 203 P.3d 483, 492 (2009) (cleaned up).  Under A.R.S. § 12-563, "[b]oth of the following shall be necessary elements of proof that injury resulted from the failure of a health care provider to follow the accepted standard of care:  1. The health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances; 2. Such failure was a proximate cause of the injury."

vi.  In No. CV-25-00088-TUC-AMM, Plaintiff's claim arises under the Eighth Amendment and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).  To succeed on his *Bivens* claim,

plaintiff must show (1) a serious medical need by demonstrating that failure to treat his condition could result in further significant injury or the unnecessary and wanton infliction of pain; and (2) that defendant's response to the need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference is satisfied by showing a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Id.* Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment. *Id.*

b. Defendant's Affirmative Defenses: *See* 3(b), above. To the extent Defendant asserts that there is a non-party is at fault for any of Plaintiff's asserted claims, Defendant bears the burden of establishing the same elements of such claims against that non-party. Further, Defendant Avilez may be entitled to qualified immunity if she shows either that a constitutional right was not violated, or that the right in question was "not clearly established in light of the specific context of the case at the time of the events in question." *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011). To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton* 483 U.S. 635, 640 (1987).

5. Disputed Issues:

a. The major factual and legal issues in this matter are genuinely in dispute at this time. The parties will meet and confer, as discovery progresses, to determine whether legal or factual issues can be narrowed by stipulation or motion.

b. Additionally, the parties dispute the applicability of A.R.S. §§ 12-2603 & 2604 to Plaintiff's medical malpractice claims. Defendant asserts that those provisions must be complied with to the extent medical malpractice claims (as well as defenses and cross-claims) are asserted. *See, e.g., Man v. United States*, No. CV0-13-1224-TUC-CKJ, 2014 WL 4230810, at *6 (D. Ariz. Aug. 27, 2014); *O'Connor v. United States*, No. CV-22-00257-PHX-JAT, 2023 WL 3060958, at *1 (D. Ariz. Apr. 24, 2023). Plaintiff asserts that the requirements of those provisions do not apply to the extent they are in conflict with the Federal Rules of Civil Procedure, for the reasons set forth in in *Martin v. Pierce County*, 34 F.4th 1125 (9th Cir. 2022).

6. <u>Jurisdictional Basis</u>: The Court has jurisdiction over No. CV-25-00086-TUC-AMM under 28 U.S.C. § 1346(b). The Court has jurisdiction over No. CV-25-00088-TUC-AMM under 28 U.S.C. § 1331. Defendants reserve the right to raise subject matter jurisdiction defenses.

7. <u>Service</u>: All presently identified parties to this action have been served. Plaintiff anticipates amending the complaint in No. CV-25-00088-TUC-AMM to identify defendants currently identified as John Does, at which point Plaintiff will serve the newly-identified defendants.

8. <u>Service of Parties</u>: All parties who have appeared have been served

9. <u>Dispositive Motions</u>: The parties anticipate that they may file pretrial dispositive or partially dispositive motions in this matter. The parties need to conduct additional discovery to identify the nature of any pretrial dispositive motions, if any.

10. <u>Summary Judgment</u>: The parties do not know at this time whether they will file cross-motions for summary judgment. As discovery progresses, the parties will meet and confer on an appropriate dispositive motion briefing schedule.

11. <u>Related Cases</u>: The Court previously consolidated the two above-captioned matters under LRCIV 42.1(a).  There are no additional related cases.

12. <u>Initial Disclosures</u>: The parties agree to make initial disclosures under Fed. R. Civ. P 26(a)(1) by January 23, 2025.

13. <u>Alterations to Default Discovery Rules</u>: The parties agree that they will be permitted to depose any witness disclosed by any party under Federal Rule of Civil Procedure 26(a)(1), even if the number of witnesses exceeds ten, subject to the scope of discovery as set forth in Federal Rule of Civil Procedure 26(b)(1).  The number of witnesses to the events at issue and the complex nature of Plaintiff's medical treatment will likely necessitate depositions exceeding the default limit.

14. <u>Discovery</u>: The parties anticipate conducting written discovery, including interrogatories, requests for production, requests for admission, and issuance of third-party subpoenas.  The parties expect discovery to include documentary evidence related to the incident giving rise to this matter, including but not limited to reports, video and audio footage, investigative documents, personnel files, medical records and other documents and communications related to the allegations in the complaint.  The parties further expect to conduct depositions of percipient witnesses and medical treaters during the fact discovery stage. The parties further anticipate expert discovery.  The parties agree that expert disclosures should occur after the close of fact discovery; otherwise, the parties do not believe that discovery should be phased or limited to particular issues.

15. <u>ESI</u>: The parties agree that written discovery will include exchange of electronically stored information.  The parties anticipate entering into an ESI protocol or agreement governing the production of ESI.

16. <u>Privilege</u>: If it becomes necessary to assert a claim of privilege after privileged documents have been produced, the parties agree to the following procedure

and respectfully request the Court include it in its Scheduling Order in this case pursuant to Federal Rule of Evidence 502:

> If a producing party discovers that it has inadvertently produced privileged or work-product material, it shall promptly notify the receiving party and ask for the return of such material. The receiving party shall then either return or destroy that inadvertently-disclosed material immediately (including any copies or derivatives thereof). If the receiving party is the first to recognize that material produced in discovery may be privileged or attorney work product, the receiving party shall refrain from any further review of the material, shall notify the producing party as soon as possible of the inadvertent production, shall ask the producing party whether such material should be returned or destroyed, and if so requested by the producing party, shall return or destroy the material. If under either such scenario, however, there is a good-faith argument that the material is not privileged or that the privilege has been waived, the receiving party shall sequester the disputed material and refrain from any further use of it until such time as the claim of waiver is resolved, whether by meet and confer or motion to the Court.

17. The parties anticipate that *Daubert* hearings may be required after the completion of expert discovery.

18. The parties anticipate that the case will be ready for trial in the fall of 2026. The parties anticipate a 5-to-7-day trial.

19. A jury trial is unavailable in No. CV-25-00086-TUC-AMM, which is brought pursuant to the FTCA. *See* 28 U.S.C. § 2402. Plaintiff, however, requests a jury trial in No. CV-25-00088-TUC-AMM. The parties anticipate a single trial

for these, with the issues in the FTCA matter being tried to the Court and the issues in the *Bivens* matter being tried to a jury.

20. The parties have discussed settlement. Plaintiff wishes to conduct preliminary discovery before proceeding with settlement discussions.  After conducting preliminary discovery, the parties anticipate that they will resume settlement discussions. The parties do not request a settlement conference with a Magistrate Judge at this time, though they will apprise the Court if they wish to seek one in the future.

21. This is not a class action.

22. The parties do not request that this case be placed on the complex track.

23. Rule 5 Stipulation: The parties agree to electronic service of discovery papers, notices, and similar papers by e-mailing such papers to counsel of record.

24. Proposed deadlines:

| Initial Disclosures | January 23, 2026 |
| Motions to amend the complaint/join additional parties | March 18, 2026 |
| Completion of fact discovery | July 24, 2026 |
| Plaintiff's Expert Disclosures | August 21, 2026 |
| Defendant's Expert Disclosures | September 11, 2026 |
| Plaintiff's Rebuttal Expert Disclosures | October 2, 2026 |
| Completion of Expert Discovery | October 23, 2026 |

| Dispositive/Daubert Motions | December 4, 2026 |
|---|---|
| Joint Proposed Pretrial Order | 30 days after ruling on dispositive motion(s) |
| Settlement status reports | April 17, 2026 and every 90 days thereafter |

Respectfully submitted this 7th of January, 2026.

ROMANUCCI & BLANDIN, LLC

s/ *Stephen H. Weil*
STEPHEN H. WEIL
BENJAMIN A. BERKMAN
___

ADAM GORDON
United States Attorney
Southern District of California

s/ *Lisa M. Hemann* [with consent]
s/ *Glen F. Dorgan* [with consent]
GLEN F. DORGAN
STEPHANIE A. SOTOMAYOR
LISA M. HEMANN
Assistant United States Attorneys